**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**NEWPORT NEWS DIVISION**

**COUNTY SCHOOL BOARD OF**
**YORK COUNTY, VIRGINIA,**

**PLAINTIFF,**

v.                                                    **CIVIL ACTION NO.: 4:03CV174**

**A.L.,**
    **And his parents**
    **And next friends,**

**A.L. and S.L.**

**DEFENDANTS.**

**<u>OPINION AND ORDER</u>**

This matter is before the Court on Defendants' Motion for Attorneys' Fees and Costs.  Plaintiff ("York") argues Defendants are not entitled to attorneys' fees for failing to procedurally perfect their motion, and in the alternative, asserts Defendants should be awarded fees in a lesser amount.  York also denies Defendants are entitled to costs, contending Defendants defaulted in making this claim and that the fees sought are excessive.  For the reasons stated herein, Defendants' Motion is **GRANTED** in part and **DENIED** in part.

I. PROCEDURAL BACKGROUND[1]

On December 30, 2003, Plaintiff filed its Complaint in this matter under the Individuals with Disabilities Act ("IDEA"), 20 U.S.C. § 1400, et seq., contesting the decision of an administrative hearing officer concerning the individualized education program ("IEP") of A.L. ("Defendant A.L."), a mentally handicapped student.  Doc. 1. The Complaint challenged the hearing officer's determination that Defendant A.L.'s IEP was insufficient to afford him a free appropriate public education ("FAPE"), as required by law.  Id.  York sought to have the administrative ruling reversed, and ultimately to have York's suggested IEP implemented over Defendants' objections.  Id.

On March 12, 2004, Defendants filed their Answer, requesting the judgment of the hearing officer be upheld and the Complaint dismissed.  Doc. 6.  Defendants' chief concern with York's proposed IEP, which was the subject of the litigation,  "was that [Defendant] A.L. receive sign language services consistent with the requirements set forth in the Virginia Regulations Governing Special Education Programs."  Doc. 31 at 2 (Opinion and Order of January 18, 2005).

On January 18, 2005, the Court partially affirmed the hearing officer's decision that Defendant A.L.'s IEP was inadequate, and ordered that York remedy the situation.[2]

---

[1] This section does not represent the entire procedural background of the case, but only that which is relevant to the Court's determination of the present issues.

[2] Defendants agree that the Court's Opinion and Order of January 18, 2005 did not completely affirm the hearing officer's decision.  Doc. 34 at 2 (Memorandum of Law in Support of Defendants' Motion for Attorneys' Fees and Costs of February 1, 2005).

Doc. 31.  Specifically, the Court ordered that Defendant A.L. is entitled to receive more qualified communicative assistance[3] and direct occupational therapy services, contrary to Plaintiff's proposed IEP.  Id. at 7-12.   However, the Court also ruled, consistent with the views of professional educators and York, that Defendant A.L.'s IEP is neither required to afford additional specific transitional goals and objectives, nor homework assignments to Defendant A.L.  Id. at 7, 10-11.  Furthermore, the hearing officer's finding that York committed two procedural violations was affirmed.  Id. at 5-7, 11.

On February 1, 2005, Defendants filed their initial Motion for Attorneys' Fees and Costs and supporting Memorandum, requesting a total of $51,751.85.  Docs. 33, 34.  Therein, Defendants expressly reserved the right to seek additional fees for further work in the case.  Doc. 34 at 1 n.1.  York filed its Memorandum in Response to Defendants' Motion for Attorneys' Fees and Costs on February 14, 2005.  Doc. 37.  On February 22, 2005, Defendants filed their Rebuttal Memorandum of Law in Support of Defendants' Motion for Attorneys' Fees and Costs.  Doc. 40.

In the Court's Opinion and Order of May 23, 2005, the Court, with the agreement of both parties, stayed consideration of Defendants' Motion for Attorneys' Fees and Costs.  Doc. 43 at 7, 9.  The Court did not require York to post a supersedeas bond, despite Defendants' objection.  Id. at 7-9.  The Court's Opinion and Order of May 23, 2005 did not indicate any triggering circumstances which would automatically lift its stay

---

[3] Defendant A.L. is entitled to receive communicative assistance provided by a VQAS Level III interpreter as required by law.  Doc. 31 at 10.

of consideration of Defendants' Motion for Attorneys' Fees and Costs.  Doc. 43 at 9.

York appealed, and the Fourth Circuit Court of Appeals affirmed the Court's Opinion and Order of January 18, 2005, issuing its judgment, effective on September 7, 2006.  Docs. 44-46.

On January 26, 2007, Defendants filed their Supplemental Memorandum of Law and Exhibits in Support of Defendants' Motion for Attorneys' Fees and Costs.  Doc. 47. York filed its Brief in Opposition to Defendants' Motion for An Award of Attorneys' Fees and Costs and Supplemental Motion on February 8, 2007.  Doc. 48.  On February 16, 2007, Defendants filed their Reply Memorandum of Law and Exhibits in Support of Defendants' Motion for Attorneys' Fees and Costs.  Doc. 50. Most recently, at the hearing on this motion, Defendants filed a Supplemental Statement of Work Performed by Jonathan G. Martinis, Doc. 53, and a Declaration of Shannon M. Manning Regarding Filing of Defendants' Supplemental Memorandum and Exhibits in Support of Defendants' Motion for Attorneys' Fees and Costs.  Doc. 52.  Lastly, at hearing, Defendants moved to withdraw its request for a portion of an interest award, which the Court grants.

## II.  STANDARD OF REVIEW

Regarding claims brought pursuant to the IDEA, 20 U.S.C. § 1415(i)(3)(B)(i) provides "[i]n any action or proceeding brought under this section, the court, in its

discretion, may award reasonable attorneys' fees as part of the costs to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i). "Fees awarded under this paragraph [of the IDEA] shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(C).

The Court has "broad discretion" in determining the appropriate fee award. Carroll v. Abramson, 53 F.3d 626, 628 (4th Cir. 1995) (finding the court did not abuse its discretion in ordering a low attorneys' fee award in light of the degree of success obtained) (citing Daly v. Hill, 790 F.2d 1071, 1085 (4th Cir. 1986)).

## III. DISCUSSION

### A.  Plaintiff's Procedural Arguments to Entire Motion

York contends Defendants' entire motion is defective on several procedural theories. Each argument is without merit. First, York claims Defendant's motion for fees is withdrawn in light of Local Rule 7(E). Doc. 48 at 2. Local Rule 7(E) deems a motion withdrawn if not set for hearing within 30 days from the filing of the motion. E.D. VA. LOC. CIV. R. 7(E). This contention is without merit because Defendants' Motion for Attorneys' Fees and Costs was stayed by agreement of both parties pending York's appeal. York's argument misapprehends the nature and effect of a stay in judicial proceedings, as Plaintiff implicitly argues the stay was lifted as of "September 8, 2006,

when the Court of Appeals delivered its Judgment to this Court." Doc. 50 at 2.

Generally, the lifting of a stay is governed by the terms of the order granting the stay. See

Bryte v. Am. Household, Inc., 142 Fed. Appx. 699, 704 (4th Cir. 2005) ("the stay entered

with respect to Sunbeam's retention policy will be lifted by the terms of the stay order.").

The Court's Opinion and Order of May 23, 2005 did not specify any triggering event(s)

which would automatically lift the stay of Defendants' Motion for Attorneys' Fees and

Costs, but rather commented that the Court may address any financial hardship on

Defendants by awarding interest in addition to any fee award, if appropriate. Doc. 43 at

7, 9. Moreover, even where action by an appellate court obviates the need for a stay,

further action, by the court that entered the stay, is typically needed to lift the stay. See

Sunrise Corp. of Myrtle Beach v. City of Myrtle Beach, 420 F.3d 322, 326 (4th Cir. 2005)

("After the Supreme Court of South Carolina dismissed the writ of certiorari, the district

court lifted its stay in this case, and both parties later filed motions for summary

judgment."); A.H. Robins Co., Inc. v. Dalkon Shield Claimants Trust, 972 F.2d 77, 81

(4th Cir. 1992) ("For that reason, we remand this case to the district court with

instructions to stay the proceedings ... ."). Otherwise, where the Fourth Circuit has acted

to lift a stay of the district court, it has expressly done so in its ruling. United States v.

Fernandez, 887 F.2d 465, 471 (4th Cir. 1989) ("The appeal in this case is hereby

dismissed, and the stay of trial proceedings is accordingly lifted."). As the Fourth

Circuit's opinion did not expressly lift the stay in this matter, and the Court's Opinion and

Order of May 23, 2005 did not provide for any circumstances whereby the stay would be automatically lifted, the Court concludes the stay was still in effect so as to render Defendants' setting of hearing for its Motion for Attorneys' Fees and Costs as proper under the local rule.  However, the Court will address Defendants' belatedness in setting this matter for hearing as part of its determination not to award interest upon the fee award.  Moreover, it is hereby **ORDERED** that the previous stay concerning consideration of Defendants' Motion for Attorneys' Fees and Costs is lifted.

Next, York argues Defendants' supplemental memorandum of January 26, 2007 should be viewed as a new motion and determined late under FED. R. CIV. PROC. 54(d)(2)(B).  Doc. 48 at 3.  Defendants correctly argue this filing is not a new motion, but rather a memorandum supplementing a motion which was timely filed.  Doc. 50 at 4-5; see Doc. 47 at 1 (titled, "Supplemental *Memorandum* of Law and Exhibits in Support of Defendants' Motion for Attorneys' Fees and Costs") (emphasis added).  Accordingly, the Court views this as one motion for attorneys' fees and costs, consisting of several submissions detailing the work performed over the various segments of the case. Therefore, the Court concludes York's contention under FED. R. CIV. PROC. 54(d)(2)(B) is without merit.

### B.  Costs

Defendants request $574.85 in costs, itemized as two separate expenditures.  Doc. 34, Ex. 1 at unnumbered p. 6 (Shannon M. Manning's Statement of Work).  York

contends Defendants are barred from recouping these costs by virtue of the timing and

format of their request, and the nature of the costs detailed.  Doc. 37 at 3-5.  Defendants

do not rebut York's contentions in any of their later filings on this subject.  See Docs. 40,

47, 50, 52, 53.  Defendants' failure to properly file its Bill of Costs precludes recovery of

these costs.  Accordingly, the Court **DENIES** Defendant's Motion for Costs.

## 1. Procedural Default: Timeliness

The local rule provides, in pertinent part: "Bill of Costs.  The party entitled to costs

shall file a bill of costs as provided in 28 U.S.C. §§ 1920 and 1924 within eleven (11)

days from entry of judgment, unless such time is extended by order of the Court."  E.D.

VA. LOC. CIV. R. 54(D)(1).  Defendants' Motion for Attorney's Fees and Costs of

February 1, 2005 was filed after the eleven (11) days allotted, as both the Court's Opinion

and Order, and Judgment, were entered on January 18, 2005.  Doc. 31-33.  No Bill of

Costs was filed with the Clerk.  Defendants' Motion of February 1, 2005 was the first

filing by Defendants resembling a Bill of Costs, which must be timely filed under the

rule.  E.D. VA. LOC. CIV. R. 54(D)(1).  Accordingly, the Court should deny Defendants'

Motion for Costs as no Bill of Costs or similar documentation was timely filed.  See JTH

Tax, Inc. v. H&R Block E. Tax Servs., Inc., 245 F. Supp. 2d 756, 761 (E.D. Va. 2002)

(denying motion for leave to file bill of costs out of time, which was filed 25 days after

the filing deadline);  Marryshow v. Flynn, 986 F.2d 689, 693-94 (4th Cir. 1993)

(indicating an untimely filing creates a stricter situation than a defective filing for

attorneys' fees).

### 2.  Procedural Default: Format of List of Costs

Defendants contend York should be taxed $574.85 for two services paid by Defendants.  Doc. 34, Ex. 1 at unnumbered p. 6.  Shannon Manning's Statement of Work indicates a cost of $375.20 for "Pat Trice interpreting fee for Christine Plunk deposition" and $199.65 for "Court reporter and transcript for Christy Morgan deposition."  Id.

Plaintiff notes that no bill of costs was filed by Defendants with the Clerk, but rather the request was integrated into their Motion for Attorney's Fees.  Doc. 37 at 3.

The local rule states the bill of costs "shall distinctly set forth each item thereof so that the nature of the charge can be readily understood," and further requires "[a]n itemization and documentation for requested costs in all categories shall be attached to the cost bill."  E.D. VA. LOC. CIV. R. 54(D)(1).  Shannon Manning's Statement of Work does not comply with the rule insofar as it was not directed to the clerk, was not formatted as a bill of costs, and does not contain documentation of the alleged services.  Doc. 34, Ex. 1 at unnumbered p. 6.

Therefore, Defendants did not comply with the local rule in terms of the formatting, filing, and documentation of their Bill of Costs.  Because Defendants' motion for costs is **DENIED** for procedural reasons, the Court does not address the reasonableness of the costs sought.

### C. Attorneys' Fees: Legal Principles

Defendants have moved to recoup attorneys' fees from the Plaintiff.  Docs. 33, 34, 40, 47, 50, 52, 53.  Initially, shortly after the Court rendered its Opinion and Order of January 18, 2005, Defendants moved the Court to award $51,177.00 in attorneys' fees, reflecting the work of attorneys Shannon M. Manning ("Manning") and Kristin B. Cooper ("Cooper"), at a rate of $150.00 per hour for each, over an aggregate of 341.18 hours.  Doc. 34 at 5.  This motion was made on February 1, 2005, within the allotted 14 days from judgment, as required by statute.  FED. R. CIV. PRO. 54(d)(2)(B).  This assessment included all of the effort expended from the initiation of the case through February 1, 2005, and expressly reserved the right to seek remuneration for additional fees incurred over the pendency of the litigation.  Doc. 34 at 5-6; Doc. 34, Ex. 1 at unnumbered p. 14; Doc. 34, Ex. 2 at unnumbered p. 14 (Kristin B. Cooper Statement of Work Performed).  Both Manning and Cooper submitted Declarations indicating their experience and work performed on this case.  Doc. 34, Exs. 1-2.  Moreover, Defendants included the Declaration of attorney Frank M. Feibelman, which estimated the reasonable market rate of these attorneys' services.  Doc. 34, Ex. 3.

On January 26, 2007, Defendants filed a supplemental memorandum, together with exhibits, reflecting additional fees not covered in their initial memorandum.  Doc. 47.  Therein, Defendants assess 69.92 hours of work by Manning, and 24.67 hours of work by Martinis, all of which occurred since February 1, 2005.  Doc. 47, Ex. B at 1-4; Doc. 47,

Ex. C at 1-3.  Martinis also requests 6.0 hours for work expended regarding this motion.

Doc. 50, Ex. B.  Additionally, at hearing, Defendants submitted a Supplemental

Statement of Work Performed by Jonathan G. Martinis, which accounted for his efforts

immediately leading up to the hearing and during the hearing.  Doc. 53.  Plaintiff objected

to the document because it was not produced prior to the hearing.  Typically, Plaintiff's

objection would be well founded.  However, the unique nature of this motion, requesting

compensation for work performed on the litigation that is pending, leaves the moving

party with no other choice but to submit last minute estimates for its most recent work.  In

Martinis' most recent request, he asserts 7 hours and 45 minutes (7.75 hours) for billable

work performed and also details tasks for which he is not charging.  Doc. 53.  Plaintiff did

not contest any of these entries as unreasonable or clerical, and the Court, upon reviewing

the submission, concludes all the entries are reasonable and reflect legal work.

### 1.  Burden of Proof

Where legal fees are sought, "the fee applicant bears the burden of establishing by

clear and convincing evidence the amount of a reasonable fee in the circumstances."

Rucker v. Sheehy Alexandria, Inc., 255 F. Supp. 2d 562, 564 (E.D. Va. 2003) (citing

Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)).  Respecting the total work claimed, "fee

claimants must submit documentation that reflects 'reliable contemporaneous recordation

of time spent on legal tasks that are described with reasonable particularity,' sufficient to

permit the court to weigh the hours claimed and exclude hours that were not 'reasonably

expended.'"  Id. (citing EEOC v. Nutri/System, Inc., 685 F. Supp. 568, 573 (E.D. Va.

1988)); see Hensley, 461 U.S. at 433 ("The party seeking an award of fees should submit

evidence supporting the hours worked and rates claimed.  Where the documentation of

hours is inadequate, the district court may reduce the award accordingly.").  "Inadequate

documentation includes the practice of grouping, or 'lumping,' several tasks together

under a single entry, without specifying the amount of time spent on each particular task."

Id. at 564 n.3 (citing In re Great Sweats, Inc., 113 B.R. 240, 244 (Bankr. E.D. Va. 1990)).

"[D]etermination of the hourly rate will generally be the critical inquiry in setting

the 'reasonable fee,' and the burden rests with the fee applicant to establish the

reasonableness of a requested rate."  Plyler v. Evatt, 902 F.2d 273, 277 (4th Cir. 1990)

(citing Blum v. Stenson, 465 U.S. 886, 895-96 (1984)).  "In addition to the attorney's

own affidavits, the fee applicant must produce satisfactory 'specific evidence of the

prevailing market rates in the relevant community for the type of work for which he seeks

an award.'"  Id. (citing Spell v. McDaniel, 824 F.2d 1380, 1402 (4th Cir. 1987) (internal

quotation omitted)).

The overall fee award may be reduced due to inadequate documentation by either

"identifying and disallowing specific hours that are not adequately documented, or by

reducing the overall fee award by a fixed percentage or amount based on the trial court's

familiarity with the case, its complexity and the counsel involved."  Hensley, 461 U.S. at

433 (citing Nutri/System, Inc., 685 F. Supp. at 576 (citation omitted)).

2.  Computing the Award

a.  Prevailing Party

In determining the amount to award, if any, in attorneys' fees, the first step is to

determine whether the moving party is the prevailing party.  Hensley, 461 U.S. at 433

(considering a claim for attorneys' fees under 42 U.S.C. § 1988).[4]  This is a threshold

finding, and is generously formulated to consider a party prevailing "if they succeed on

any significant issue in litigation which achieves some of the benefit the parties sought in

bringing suit."  Id. (citing Nadeau v. Helgemoe, 582 F.2d 275, 278-79 (1st Cir. 1978));

Farrar v. Hobby, 506 U.S. 103, 109 (1992) (alternatively noting a party prevails "when

actual relief on the merits of his claim materially alters the legal relationship between the

parties by modifying the defendants' behavior in a way that directly benefits the

plaintiff").  York does not dispute Defendants' assertion that they are the prevailing party

under this standard.  Doc. 37 at 6.

b.  Determining Reasonable Fees: The Lodestar Figure

Next, the Court is to determine what fee is reasonable.  Hensley, 461 U.S. at 433.

The beginning point of this analysis is to multiply the "number of hours reasonably

expended on the litigation [] by a reasonable hourly rate."  Id.; Lilly v. Harris-Teeter

---

[4] "The term 'prevailing party' connotes the same general meaning under [§ 1415(i)(3)(B)(i), the Rehabilitation Act,] and 42 U.S.C. § 1988, and cases interpreting [these] sections apply the same principles to determine a plaintiff's entitlement to attorneys' fees." Combs v. Sch. Bd. of Rockingham County, 15 F.3d 357, 360 (4th Cir. 1994) (citing Tice v. Botetourt County Sch. Bd., 908 F.2d 1200, 1205 n.4 (4th Cir. 1990); Child v. Spillane, 866 F.2d 691, 692 n.1 (4th Cir. 1989)).

Supermarket, Corp., 842 F.2d 1496, 1510 (4th Cir. 1988).  Thus, the Court should

"exclude from this initial fee calculation hours that were not reasonably expended."  Id. at

434.  "To make this calculation, the [C]ourt must necessarily exclude any hours that are

'excessive, redundant, or otherwise unnecessary,' and therefore not reasonably expended

on the litigation."  Lilienthal v. City of Suffolk, 322 F. Supp. 2d 667, 670 (E.D. Va. 2004)

(citing Hensley, 461 U.S. at 434).   "The figure resulting from this calculation is more

than a mere 'rough guess' or initial approximation of the final award . . . [but is rather]

*presumed* to be the reasonable fee to which counsel is entitled."  Pennsylvania v.

Delaware Valley Citizens' Council for Clear Air, 478 U.S. 546, 564 (1986) (emphasis in

original) (citing Blum, 465 U.S. at 897).  The product derived from this assessment

represents "a lodestar figure."[5]  Saleh v. Moore, 95 F. Supp. 2d 555, 566 (E.D. Va. 2000).

Critical to determining the lodestar amount is the Court's assessment of the

"results obtained" in the litigation by the prevailing party.  Hensley, 461 U.S. at 434;

Pennsylvania, 478 U.S. at 565 (noting this factor is included in determining the lodestar

figure, contrary to the previous ordering in Hensley, which placed the Court's

---

[5] In determining the lodestar figure, it is important to note that this amount only applies to legal work.  A lesser rate may attend clerical and administrative functions.  In Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717 (5th Cir. 1974), which has been adopted by the United States Supreme Court in several opinions, the court concluded regarding the performance of clerical tasks by attorneys:

> It is appropriate to distinguish between legal work, in the strict sense, and investigation, clerical work, compilation of facts and statistics and other work which can often be accomplished by non-lawyers but which a lawyer may do because he has no other help available.  Such non-legal work may command a lesser rate.  Its dollar value is not enhanced just because a lawyer does it.

consideration of this factor after the lodestar amount had been reached).  This is particularly crucial where the prevailing party succeeded in pursuing only some but not all of his claims for relief.  Hensley, 461 U.S. at 434.

Generally, "[w]here a [prevailing party] has obtained excellent results, his attorney should recover a fully compensatory fee[,] . . . encompass[ing] all hours reasonably expended on the litigation." Id. at 435.  "In these circumstances the fee award should not be reduced simply because the [prevailing party] failed to prevail on every contention raised in the lawsuit." Id.  The "most critical factor is the degree of success obtained," and the Court should not apply "a mathematical approach comparing the total number of issues in the case with those actually prevailed upon." Id. at 436, 435 n.11.  No precise rule prevails in making this determination, and the Court may "identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." Id. at 436-37.

Most, if not all, of the twelve factors considered in Johnson, 488 F.2d at 717-19 should be addressed in defining the lodestar figure.  Daly, 790 F.2d at 1077.  These factors include:

1) the time and labor expended;
2) the novelty and difficulty of the issues;
3) the skill requisite to properly perform the legal service;
4) the preclusion of other employment by the attorney due to acceptance of the case;
5) the customary fee;
6) whether the fee is fixed or contingent;
7) time limitations imposed by the client or the circumstances;

8) the amount involved and the results obtained;
9) the experience, reputation, and ability of the attorneys;
10) the undesirability of the case;
11) the nature and length of the professional relationship with the client; and
12) awards in similar cases.

Daly, 790 F.2d at 1075 n.2 (citing Johnson, 488 F.2d at 717-19).

 Other Johnson factors bearing on the Court's conclusion as to the lodestar figure include the "novelty and complexity of the issues," "the special skill and experience of counsel," and "the quality of representation."  Pennsylvania, 478 U.S. at 565; Daly, 790 F.2d at 1077-78.  Aside from those four factors mentioned, the Court does not further expound on which factors are to be considered for the lodestar calculation, and which apply in determination of whether to adjust the total amount.  However, the Court emphasizes the need to apply as many factors as necessary to determine the reasonable rate and reasonable hours expended, prior to setting the lodestar amount.  See Daly, 790 F.2d at 1078 (stating "the critical focus in calculating a reasonable attorneys' fee is in determining the lodestar amount," "[t]he proper point at which the Johnson factors are to be considered is in determining the reasonable rate and the reasonable hours," and "the lodestar fee is now the proper focus of the entire Johnson analysis in most cases").

c.  Upward / Downward Adjustment of the Award

 "The [Court] also may consider other factors identified in Johnson, 488 F.2d at 717-719, though it should note that many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate."  Hensley,

461 U.S. at 434 n.9 (citing Copeland v. Marshall, 205 U.S. App. D.C. 390, 400 (1980));

Lilly, 842 F.2d at 1510 (adjusting the lodestar figure in light of the remaining Johnson

factors, after considering most of the Johnson factors to arrive at the lodestar figure).  The

Court must not weigh those factors again, which initially bore on its determination of the

initial lodestar figure.  Pennsylvania, 478 U.S. at 566 (regarding this practice as

inappropriate "double counting"); Daly, 790 F.2d at 1082.  As stated above, the lodestar

figure is presumed correct, and if "properly calculated, adjustment of that figure will, in

most cases, be unnecessary."  Daly, 790 F.2d at 1078.

### D.  Attorney's Fees: Application

#### 1.  Reasonable Market Rate

a.  Shannon M. Manning and Kristin B. Cooper: Evidence of Market Rate

Defendants have submitted a number of Declarations as evidence of the

appropriate rate for the several attorneys' efforts.  Docs. 34, Ex. 1-3; Doc. 47, Ex. A.

Initially, Defendants asserted the work of Shannon M. Manning ("Manning") and Kristin

B. Cooper ("Cooper") should be valued at $150.00 per hour for each, in light of the

Declaration of Frank M. Feibelman ("Feibelman").  Doc. 34, Ex. 3.  Feibelman, a

practicing attorney, who handles "a great deal" of civil rights claims, and has "handled

civil rights cases in the United States District Court for the Eastern District of Virginia,"

submitted his estimation of the value of the services of Manning and Cooper.  Doc. 34,

Ex. 3 at 2.  He indicated a familiarity "with the prevailing market rates for lawyers who

practice civil rights law in the Commonwealth of Virginia and in the Eastern District of

Virginia," and based his assessment on that familiarity and "the *Curriculum Vitae* of

Shannon M. Manning, Esquire and Kristin B. Cooper, Esquire." Id.  He determined the

attorneys each qualified to recover attorneys' fees at a rate of $150.00 per hour.  Id.  York

does not dispute the $150.00 per hour rate asserted by Feibelman, but argues certain tasks

should not be compensated.  Doc. 37 at 6-10.

In Defendants' Supplemental Memorandum, they contend the appropriate fees for

Manning and Cooper should be $275.00 per hour, and $200.00 per hour, respectively.

Doc. 47 at 3.  This is particularly odd, given Cooper has much more experience than

Manning.  Doc. 43, Exs. A-B.  As a basis for this increase, Defendants submit the

Declaration of Adrienne Volenik ("Volenik"), another expert in the prevailing market

rates for lawyers engaged in this type of work.  Doc. 47, Ex. A.  Defendants submit no

evidence for why Volenik's opinion should be valued over Mr. Feibelman's conclusion,

but merely state they "now realize that the hourly rate they initially requested was

inconsistent with the hourly rates charged by similarly experienced attorneys representing

children in special education cases before this Court."  Doc 47 at 3-4.  At hearing,

Defendants did little to expound on this explanation for why one declaration should be

disregarded and the other accepted.  Accordingly, because Defendants bear the burden of

proving the reasonable market rate, and York did not contest the Defendants' initial

calculation, The Court limits Defendants to their initial calculation of $150.00 per hour

for both Manning and Cooper.  Moreover, in light of the Court's assessment of the

<u>Johnson</u> factors, the Court deems it proper to accept Defendants' initial proposed rate.

### b.  Jonathan G. Martinis: Evidence of Market Rate

Regarding the appropriate rate for the services of Johnathan G. Martinis

("Martinis"), Defendants submitted the Declaration of Volenik, a licensed attorney who

has recently been involved in "IDEA cases in the United States District Court for the

Eastern District of Virginia in the past year."  Doc. 47, Ex. A at 2.  Based on her review

of the material submitted by Defendants' counsel regarding the present motion and her

familiarity "with the prevailing market rates" for lawyers practicing in the

Commonwealth of Virginia and Eastern District of Virginia, she assessed the appropriate

fee rate for Martinis at $350.00 per hour.  <u>Id.</u>  York does not dispute this fee rate for

Martinis.  Doc. 48.  Accordingly, in light of the Court's assessment of the <u>Johnson</u> factors

and Plaintiff's acceptance of the proposed rate, the Court adopts the rate of $350.00 per

hour as the reasonable rate for Martinis.

### c.  <u>Johnson</u> Factors

In addition to weighing the evidence submitted by the parties, and their

concessions, the Court assesses the reasonable rate in light of the particular qualifications

of the attorneys and the nature of the case.  These facts are considered in light of the

twelve <u>Johnson</u> factors.  While some courts have chosen to attach weights to each factor

in a hyper-mathematical fashion, the United States Supreme Court has emphasized the

test is not precise.  Accordingly, the Court indicates its findings on each factor without

attaching a certain weight to the particular factor as it bears on this case.  In the present

case, the Court's consideration of these factors seems to be less critical, given York's

decision not to dispute the market rates asserted, except to argue Defendants should be

limited to their initial estimation of appropriate rates for Manning and Cooper.

Nonetheless, the Court still considers the Johnson factors in completing its analysis.

Consistent with the emphasis of the United States Supreme Court, the Court considers the

Johnson factors in setting its lodestar figure, and determines its assessment of the factors

do not merit an adjustment in that rate.

i.  Results Obtained

The most critical factor to consider in awarding attorneys' fees is the results

obtained in the litigation.  Presently, Defendants prevailed on their chief concern of the

litigation, the sign language interpreter's qualifications.  Doc. 31 at 2, 10-11.

Additionally, Plaintiff's proposed IEP was found insufficient so far as it did not provide

Defendant A.L. with occupational therapy services.  Id. at 10-11.  Lastly, Defendants

prevailed in terms of the Court's finding that York committed two procedural violations

in rendering its proposed IEP.  Id. at 5-7, 11.  The Court's ruling on the two procedural

violations does not add much to Defendants' overall success, as the proposed IEP was

rejected, but certainly does not count against them.  The only two rulings limiting the

success of Defendants were the Court's decisions to uphold the proposed IEP regarding

the additional specific transitional goals and objectives, and homework assignments for

Defendant A.L.  Id. at 7, 10-11.  Taking the case as a whole, the Court views the outcome

as a nearly complete success for Defendants.

### ii.  Time and Labor Expended

This factor will be addressed in determining the total amount of hours to multiply

by the reasonable market rate.

### iii. Novelty and Difficulty of Issues Raised

The novelty and difficulty of the issues in this case bear in favor of awarding

significant attorneys' fees for Manning and Cooper, the attorneys who dealt with the

novel issue of "whether a school system has to provide a qualified sign language

interpreter to a student with disabilities who is not deaf or hard of hearing."  Doc. 34, Ex.

1 at 3; Doc. 34, Ex. 2 at 3; Doc. 47, Ex. E at 4.  Moreover, according to counsel for

Defendants, the present case "is the first case in which a school system has been ordered

to provide a qualified sign language interpreter to such a student."  Id.  However, the

Court notes that counsel indicated the novelty of the issue was already addressed by the

number of hours expended in researching the issue.  Doc. 34, Ex. 1 at 3; Doc. 34, Ex. 2 at

4 (using the same language: "As a result, I had to do extensive research into the laws and

regulations governing special education[, and have] had to review thousands of pages of

information regarding this student.").

iv. Skill Requisite to Properly Perform the Legal Service / Quality of the Representation /

Experience, Reputation, and Ability of the Attorneys

While the Virginia Office for Protection and Advocacy ("VOPA"), the employer of counsel for Defendants, specializes in disability rights law, no showing has been made that exceptional skill is required to handle these type of cases. However, all three attorneys for the Defendant specialize and work solely in this area of the law. Thus, their focus on these types of cases does bear on the quality of representation they afforded to Defendant A.L. and his family.

Particularly, Manning has been employed with VOPA since February of 2002, and has served as lead counsel in over 50 disability rights cases. Doc. 34, Ex. 1 at 1-2. Manning's *Curriculum Vitae* (CV), while indicating a strong desire to assist the needs of society's most underprivileged, does not show special skills or experience sufficient to merit an increase in the fees awarded. Doc. 34, Ex. 1 at unnumbered p. 5.

Cooper's Declaration and CV indicates a higher level of experience than Manning. Doc. 34, Ex. 2. She has been with VOPA since 1999, having served as lead counsel in over 75 disability rights cases, and has additional experience in handling civil rights cases. Doc. 34, Ex. 2 at 2, unnumbered 6. Cooper's extensive experience in this field is considered in the Court's determination of her reasonable market rate.

Martinis's Declaration and CV show a high level of experience and capacity in the field of disability law. Doc. 47, Ex. E. He has "represented clients in disability law cases

for over twelve years," "had articles on disability law published in national journals,"

"served as lead counsel in over 500 disability rights cases," and frequently "speak[s] at

conferences, public hearings and training sessions on disability rights issues."  Doc. 47,

Ex. E at 2.  His extensive experience is reflected by his reasonable market rate.

   v.  Preclusion of Other Employment by Attorney Due to Acceptance of The Case

        Manning, Cooper and Martinis indicate they had to scale back their representation

of other clients and limit taking on new clients as a result of this litigation, which acted to

the detriment of the disabled community as a whole.  Doc. 34, Ex. 1 at 3; Doc. 34, Ex. 2

at 4; Doc. 47, Ex. E at 5.  They also assert an inability to assist in VOPA's other stated

objectives.  Doc. 34, Ex. 1 at 4; Doc. 34, Ex. 2 at 4; Doc. 47, Ex. E at 5 (Martinis

specifically details work that was postponed).  However, such an effect is generally

applicable in any significant case and is not so extreme as to alter their market rate.

vi.  Customary Fee

Defendants' evidence of the reasonable market rate for similarly experienced

attorneys has been discussed above.

   vii.  Whether the Fee is Fixed or Contingent / Undesirability of the Case

        Because of Defendants' limited means, they could not afford to hire counsel, and

counsel worked without compensation from their client.  Doc. 47, Ex. E at 6.  Defendants

posit the effort and time required to effectively litigate this case, coupled with the novelty

of the issues presented and lack of monetary reward, make this case highly undesirable.

Id.  The Court finds this factor to be of limited significance.

### viii.  Time Limitations by Client or Circumstances

Defendants note that every day this action was pending, Defendant A.L. was denied a FAPE, and failed to receive the education to which he was entitled.  Doc. 47, Ex. E at 6.

### ix.  Nature and Length of Professional Relationship with the Client

No information has been submitted by Defendants which bears on this factor.

### x.  Awards in Similar Cases

While Defendants do not submit information regarding awards in similar cases, they do note that the hourly rates set forth in "Volenik's Declaration are substantially less than those claimed by counsel employed by Troutman Sanders LLP—counsel for Plaintiff in this matter—in a 2006 Motion for Attorneys' Fees filed in a case where that firm represented a student in an IDEA case before the Eastern District of Virginia."  Doc. 47 at 4 n.3.  Defendants further concluded that those attorneys were less experienced than counsel for the Defendants.  Id.  While this is informative, it has no bearing on the Court's final conclusion because it does not represent an award, just a request, and therefore is outside of the considerations enumerated under Johnson.

### 2.  Hours Excluded as Non-legal

Counsel for Defendants all perform their own clerical tasks.  Doc. 34, Exs. 1-2; Doc 47, Ex. E at 3.  York contests 264 minutes of Manning's labor as purely secretarial

and clerical work, arguing it should not be included in calculating the fee award.  Doc. 37

at 9.  Defendants have not rebutted York's contention concerning these 264 minutes.

Docs. 40, 47, 50, 52, 53.  York further disputes several entries of Cooper as indicating

non-legal work, including "245 minutes spent 'organizing the file' and delivering

documents," "250 minutes travel to pick up and drop off Dr. Leichtman for a session of

the due process hearing, and 185 minutes preparing the Attorney Fee Log, Affidavit and

Resume."  Doc. 37 at 9.

"Defendants freely admit that their counsel performed tasks that could have been

performed by a paralegal or secretary," but argue the nature of their employment does not

afford them with such niceties.  Doc. 40 at 5-6.  This argument is without merit, as

Johnson accounts for the specific situation where an attorney has no other help, while still

reaching the conclusion that the work should be billed at a lesser rate.

As noted above, it is the responsibility of the fee claimant to adequately document

the time spent and the duties performed in working on the case.  The Court's review of

Cooper's Statement of Work Performed indicates several entries involving impermissible

lumping of tasks, including combining organizing the file and other tasks.  While it is

possible to speculate whether these tasks were non-legal and/or what percentage was non-

legal, no documentary clarification has been provided by Cooper.  Moreover, Defendants

have produced no evidence of the prevailing market rate for clerical or secretarial work

typical to that which was performed in this case.  Accordingly, the Court cannot apportion

time spent on non-legal work at any rate, because it has no evidence from which to

conclude a reasonable market rate for non-legal work.  Thus, the time spent on non-legal

work will simply be deducted.  Defendants' fees are deducted 264 minutes (4.4 hours) of

Manning's time as purely secretarial, because Defendants have not disputed York's claim

that this represents the amount of time Manning spent on non-legal work.

 Second, the Court considers in detail the contested time of Cooper as follows,

specifically listing the entries concerning document delivery and organizing the file.[6]

| Date: | Work Performed: | Time Expended (Minutes): |
| --- | --- | --- |
| 6.16.03 | Review and Organize File | 60 |
| 6.19.03 | Review and Organize Files, including case law | 90 |
| 7.1.03 | Fax a copy of Dr. Liechtman's proposed testimony to Dr. Leichtman; Hearing Officer Ternon Lee and Counsel for Complainant, Carla Hook and Dr. Leichtman's curriculum vitae Hearing Officer and opposing counsel, Carla Hook | 15 |
| 7.1.03 | Fax Complainant's pleading contesting Dr. Lawrence Leichtman's suitability as an expert witness to Dr. Leichtman | 10 |
| 7.10.03 | Send Motion to Compel to Hearing Officer and Attorney for Complainant, Carla Hook | 10 |

---

[6] Because Plaintiff does not specifically identify which entries are objectionable, but rather categorizes the type of entries it disputes, the Court must perform a detailed analysis of these entries with less guidance than it would like.  See Doc. 37 at 9-10.

| 7.21.03 | Prepare for Administrative Hearing; Review issues, law, prepare questions for witnesses; Organize Hearing Materials | 180 |

The Court views the July 1, 2003 and July 10, 2003 entries listed on the above charted as non-legal efforts, and concludes the remainder of the entries on the chart represent legal work.  The Court is persuaded that the task of organizing the file constitutes legal work, but finds the effort of faxing or sending documents is a clerical task.  Therefore, the Court deducts 35 minutes (0.58 hours) from Cooper's efforts for this non-legal work.

Several other entries for preparing and sending emails and faxes are arguably non-legal.  However, the Court concludes the more complex aspect of preparing the correspondence, when compared with the relative ease of employing these two communication techniques, suggests it is proper to view these as legal tasks.

The Court also finds that York's contention that Cooper's "Preparation of Attorney Fee Log Affidavit and Resume" is non-legal is without merit, especially in light of the plethora of legal challenges York raises to these documents.  Lastly, the Court agrees with York that 250 minutes (4.17 hours) should be deducted from Cooper's time, as involving transporting Dr. Leichtman to and from an administrative hearing, a non-legal function.

In sum, because the burden rests on the fee claimant to provide clear documentation of legal work, the Court deducts 264 minutes (4.4 hours) from Manning, and 285 minutes (4.75 hours) from Cooper.

3. <u>Hours Not Reasonably Expended</u>

As Plaintiff does not dispute the reasonableness of most of the hours asserted by Defendants, it is expeditious to consider only those areas of dispute.

a.  Defendants' Motion <u>in Limine</u>

York argues Defendants should not be compensated for fees related to their unsuccessful motion <u>in limine</u>.  Doc. 37 at 7.  While the Court must consider the overall result of the litigation in terms of the moving party's success, no authority exists which persuades the Court to reduce the fee award for reasonable, but unsuccessful tactics within the litigation.  The Court's inquiry is simply whether the time was reasonably expended.  Defendants' motion <u>in limine</u>, while not prevailing, was reasonable in light of the cautionary note in "<u>Springer</u> [] not to turn a plaintiff's appeal into 'an unrestricted trial <u>de novo</u>.'"  Doc. 31 at 4 (citing <u>Springer by Springer v. Fairfax County Sch. Bd.</u>, 134 F.3d 659, 666 (4th Cir. 1998)).  Accordingly, Defendants' fee award is not reduced for this reason.

b.  Dispute over School Board's Deposition of Christine Plunk

Next, York asserts Defendants should not receive any compensation for 135 minutes (2.25 hours) spent by Manning disputing the deposition of Christine Plunk.  Doc. 37 at 8.  York considers this time a waste because the issue was ultimately resolved and the deposition was taken.  Doc. 37 at 8.  York submits no further information to show why Defendants' dispute of Christine Plunk's deposition was unreasonable.  As such, the

Court will not conclude that just because a litigation dispute was ultimately resolved, it

was unreasonable.  Accordingly, York's contention is without merit based on the entries'

clear reading, and the information offered by York.

              c.  Fees Spent on IEP Meetings During Pendency of Appeal

        Last, Plaintiff argues Defendants should not be allowed to recover fees for time

spent at IEP meetings during the pendency of the appeal.  Doc. 48 at 3-4.  In support,

Plaintiff asserts "[s]uch time is not spent on issues for which Defendants are prevailing

parties and is precluded by statute."  Doc. 48 at 3 (citing 20 U.S.C. § 1415(i)(3)(D)(ii),

which provides, "IEP Team Meetings.  Attorneys' fees may not be awarded relating to

any meeting of the IEP Team unless such meeting is convened as a result of an

administrative proceeding or judicial action, or, at the discretion of the State, for a

mediation described in subsection (e).").  Defendants counter that this is inconsistent with

the factual position taken by York before the Fourth Circuit, where they alleged the case

was moot because a new IEP superceded the old proposed IEP that was the subject of the

controversy.  Doc. 50, Ex. A ("It is the position of the School Board that the February 28,

2006 IEP addendum is a replacement IEP which substantially alters A.L.'s placement and

moots the issues in the case.").  Accordingly, Plaintiff should not be allowed to argue

factually distinct and opposed positions in the same proceeding, by arguing to the Fourth

Circuit that the new IEP supercedes the disputed proposed IEP, and now maintaining to

this Court that the time spent on the IEP by Defendants did not concern the contested

issues before the Court.  Accordingly, this argument is without merit.

### 4.  Final Attorneys' Fees Award

Defendants claim 249.27 hours for Manning, 141.83 hours for Cooper, and 38.42 hours for Martinis.  Doc. 47 at 5; Doc. 50, Ex. B; Doc. 53.

In conclusion, Manning's legal work shall be compensated at a rate of $150.00 per hour for 244.87 hours, for a total of $36,730.50.  This reflects the work claimed by Plaintiffs of 249.27 hours, minus 4.4 hours deducted as non-legal work.

Regarding Cooper's legal efforts, compensation at a rate of $150.00 per hour for 137.08 hours, for a total of $20,562.00 is awarded.  This includes the requested 141.83 hours, less 4.75 hours spent on non-legal work.

Martinis submits he worked 38.42 hours, and his total is not contested by York. The uncontested rate of $350.00 per hour amounts to a total of $13,447.00.

Thus, the aggregate total award for the legal efforts of Defendants is $70,739.50. In its discretion, the Court finds no interest shall be awarded in recognition of its finding that Defendants substantially but not totally prevailed and for the additional reason that Defendants could have acted more promptly in requesting the additional fees included in their January 26, 2007 filing.[7]

---

[7] Defendants admit both at hearing, and in their Declaration of Shannon M. Manning Regarding Filing of Defendants' Supplemental Memorandum and Exhibits in Support of Defendants' Motion for Attorneys' Fees and Costs, which was filed at hearing, that they did not act as expeditiously as possible, and delayed until prompted by the Court.  Doc. 52.

IV.  CONCLUSION

Accordingly, Defendants' Motion for Attorneys' Fees is **GRANTED**, and

Defendants' Motion for Costs is **DENIED**.  It is hereby **ORDERED** that Defendants be

awarded $70,739.50 in Attorneys' Fees.

It is so **ORDERED**.

_____
/s/
*Henry Coke Morgan, Jr.*
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
March 6, 2007